MANNING, APPELLEE, *v.* LEN IMMKE BUICK, INC., APPELLANT.

(No. 10005—Decided July 20, 1971.)

*Messrs. Adams, Wolske & Blue* and *Mr. Mark K. Merkle, Jr.,* for appellee.
*Mr. Charles O. Weilbacher,* for appellant.

REILLY, J. This is an appeal on questions of law, from a judgment of the Court of Common Pleas, Franklin County, Ohio, rendered October 9, 1970, and entry overruling a motion for new trial filed October 22, 1970.

The facts are that on or about September 4, 1968, ap-

pellee and his wife discussed buying a yellow Opel station wagon with Thomas King, a salesman for appellant. Subsequently, King showed appellee and his wife a used 1968 Opel two-door sedan, which they purchased on October 6, 1968, for $1780.

Appellee testified that Thomas King said it was an excellent car, in perfect driving condition, that he knew its history; and that there was a 24-month, 24,000-mile warranty on the car. He stated that King said the car was purchased new by the shop manager, who returned it because of his wife's dissatisfaction. The speedometer registered approximately 1,200 miles at the time of the sale. The car, in fact, was sold by appellant to John Fuller, of Curly's Pizza, on April 30, 1968; was involved in a collision with a truck on May 25, 1968; was towed to appellant's storage garage and declared a total loss; and was purchased July 2, 1968, by Robert Hillegas, appellant's body shop manager, from Liberty Mutual Insurance Company. He had the car repaired by Eastway Body Shop, added some personal work on it, and on October 2, 1968, traded it to appellant's used car department.

Appellee's wife backed into a wall during the Spring of 1969, and a series of hairline cracks appeared in the metal of the rear quarter panel. She struck a telephone pole about three weeks later, dented the bumper, the rear deck, as well as the trunk, and it became apparent the car had been in an accident prior to the sale. The estimate for total repairs was $240. Appellee traded the car for a Fiat, Auggust 2, 1969, without repairing the damage. The speedometer at that time registered over 17,000 miles.

King admitted at trial that he did not know the history of the car; that his knowledge was incomplete as to the condition of the vehicle; but that nonetheless he made certain statements to appellee concerning the car. Mr. Peirce, appellant's used car manager, testified that all used cars are carefully checked out before delivery. Mr. Immke testified that company advertising stated that all used cars were inspected before delivery, and that a careful inspection would probably have divulged the true condition

of this auto. Appellee testified that the car performed unsatisfactorily.

Appellee filed this action for breach of warranty and fraud. The case was tried by the Common Pleas Court of Franklin County and resulted in a verdict for appellee in the sum of $900 compensatory damages and $15,000 punitive damages.

Appellant advances three assignments of error. The first is the following:

"The verdict and judgment of the court is against the manifest weight of the evidence and is not supported by the evidence herein."

Appellant asserts that the charge of the court concerning the elements of fraud was error. This court has previously described fraud in the case of *Crabbe* v. *Freeman* (1959), 81 Ohio Law Abs. 65. Judge Troop, at pages 66 and 67, stated:

"Reiteration of accepted fundamentals may seem unnecessary, but since Ohio courts have not passed upon our particular problem a review of announced principles must provide the basis for decision. 24 O. Jur. 2d, page 634, p. 20 provides a summary of the elements of actionable fraud. Without quoting exactly, the elements are, briefly:

"1. A false representation; actual or implied, or the concealment of a matter of fact, material to the transaction; made falsely.

"2. Knowledge of the falsity—or statements made with such utter disregard and recklessness that knowledge is inferred.

"3. Intent to mislead another into relying on the representation.

"4. Reliance—with a right to rely.

"5. Injury as a consequence of that reliance. All of these elements must be present if actionable fraud is to be found. The absence of one element is fatal to recovery."

Those are essentially the elements included in the trial court's charge.

Moreover, Civil Rule 51(A) of the Ohio Rules of Civil Procedure states:

"(A) Instructions; error; record. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed.

"No party may assign as error the giving or the failure to give any instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

There was no objection or request for further clarification at trial concerning these elements. Consequently, appellant is now precluded from assigning as error a failure to give an instruction.

Appellant asserts also that the verdict is contrary to. law. It is respectfully submitted, however, that appellant's employee made definite representations to appellee concerning the condition and prior history of the car, and he admitted making representations without knowing whether they were true or false. The Supreme Court, in the case of *Pumphrey* v. *Quillen* (1956), 165 Ohio St. 343, at pages 344-345, stated:

"* * * Obviously, this [intent] must be a matter of belief or of absence of belief that the representation is true. The state of the speaker's mind must be inquired into in determining whether an action of deceit can be maintained. The required intent is indeed present in cases where the speaker believed his statement to be false, as also in cases where the representation is made without any belief whatsoever of its truth or falsity."

Further, appellant objects to the award of compensatory and punitive damages. This court, in the case of *Craig* v. *Spitzer Motors of Columbus* (1959), 109 Ohio App. 376, at page 379, stated as follows:. "The right of a purchaser of personal property to seek in one action both

compensatory and punitive damages, particularly in an action founded in tort, cannot be questioned. * * *"

Moreover, we note the case of *Stillwell* v. *Konner's Chevrolet Corp.*, case number 9873, decided by this court on January 19, 1971. The plaintiff brought a deceit action against the defendant auto dealer for misrepresenting the condition of an automobile and the terms of sale. The judgment of the trial court was for the plaintiff. Judge Holmes wrote as follows, at page eight of the decision:

"Where there is actual fraud present, the aggrieved party may be awarded exemplary or punitive damages in addition to compensatory damages.

"There may be actual fraud where there is that degree of recklessness or negligence as evidences malice or conscious disregard of the rights of others.

"The trial court, based upon the evidence before it, was within its province when it found that there had been sufficient proof of actual fraud or misrepresentation."

Appellant's brief includes the following statement: "The rule of *caveat emptor* is approved and established in Ohio." This is generally true in real estate, but fraud is an exception to the doctrine where it applies to sales of personal property. 7 Williston on Contracts 779, Section 926. *Crabbe* v. *Freeman, supra* (81 Ohio Law Abs. 65), headnote 3, states the following: "Caveat emptor is still the rule in Ohio but fraud in the vendor constitutes an exception to the rule."

Therefore, for the foregoing reasons, appellant's assignment of error number one is not well taken.

Appellant's assignment of error number two is as follows:

"The burden of proof should have been clear and convincing and not a preponderance of evidence for the determination of constructive fraud and for punitive damages."

Fraud is a civil wrong and the issues in civil cases are determined by the preponderance or weight of the evidence. The syllabus in the case of *Jones, Stranathan & Co.* v. *Greaves* (1874), 26 Ohio St. 2, states the following:

"On the trial of a civil action wherein the claim or defense is based on an alleged fraud, the issue may be determined in accordance with the preponderance or weight of evidence, whether the facts constituting the alleged fraud do, or do not, amount to an indictable offense."

This principle is reiterated in the syllabus of *Household Finance Corp.* v. *Altenberg* (1966), 5 Ohio St. 2d 190, as follows:

"In an action for equitable relief based on fraud, such as to set aside or reform a written document, clear and convincing evidence of the fraud is required, but, in an ordinary action at law for money only based on fraud, a preponderance of the evidence is sufficient to prove such fraud."

The case of *Place* v. *Elliott* (1947), 147 Ohio St. 499, was a civil action for damages in which plaintiff alleged defendant had defrauded him by a check returned for insufficient funds. The trial court charged, page 503:

" 'The burden of proof is upon the plaintiff in this case to prove such fraud and by a preponderance of the evidence. If upon a consideration of all of the evidence the jury finds, by a preponderance of the evidence, that there was such fraud then the plaintiff is entitled to recover a verdict against such defendant, or defendants, as participated in the fraud.' "

The Supreme Court, in approving this charge, said, at page 504:

"The charge upon the subject of fraud was proper and the Court of Appeals erred in concluding that the charge upon that subject was improper."

Therefore, it is clear that the degree of proof necessary to show fraud in a civil action for damages is by a preponderance of the evidence.

This case also involves an award for punitive damages. In Ohio, the principle prevails that in actions for tort involving fraud, malice, insult, or wanton, reckless disregard of the legal rights of others, the jury may award exemplary or punitive damages based upon a preponder-

ance of the evidence. The following portion of a pertinent charge was given by the trial court, and approved by the appellate court, in the case of *Waters* v. *Novak* (1953), 94 Ohio App. 347, 351:

" 'If you find that compensatory damages are due the plaintiffs, then you will consider further as to the claim of the plaintiffs for exemplary or punitive damages. Bare fraud never entitles the parties injured to exemplary or punitive damages, but such damages may be recovered *only where the preponderance of all the evidence* shows a gross or malicious fraud, or something showing a very corrupt condition of affairs. Malice consists of bad motive, or such wanton and reckless disregard of the rights of others as to show evil intent. *If you find by a preponderance of all the evidence* these elements which are a basis for exemplary or punitive damages to be present in this case, then, if you think proper, you may go beyond mere compensation and award exemplary or punitive damages as a matter of right, even though you find fraud and misrepresentation on the part of the defendants. *Punitive damages are entirely within your discretion, to allow or refuse * * *.' "* (Emphasis added.)

Further, the Supreme Court held, in the syllabus of *Johnson* v. *Stackhouse Oldsmobile* (1971), 27 Ohio St. 2d 140, that:

"In an action for money only, the elements necessary to entitle a plaintiff to an award of punitive damages must be proved by a preponderance of the evidence."

Accordingly, appellant's second assignment of error is not well taken.

Appellant asserts assignment of error number three as follows:

"The admission of the financial statement of defendant was in error."

The record discloses the following as the only reference to appellant's financial statement:

"Q. (By Mr. Adams) Mr. Immke, I hand you what's been marked for identification as plaintiff's exhibit I and I will ask you if that is a true and correct financial state-

ment including profit and loss and balance sheet of the Defendant, Len Immke Buick, Incorporated?

"A. I would assume it to be. It was prepared by my office manager.

"Q. And what is the date of that statement?

"A. January 1 of '70 through 8/31/70.

"Q. All right. I am not going to ask further about it at this time.

"Mr. Adams: I do offer it, your Honor.

"The Court: May it be admitted?

"Mr. Martin: Over objection, your Honor.

"The Court: Very well, with an objection. Very well. There is an objection and it is admitted over objection."

The applicable principle is stated in 16 Ohio Jurisprudence 2d 318, Damages, Section 182, as follows:

"In actions where punitive damages may be allowed evidence of the defendant's pecuniary ability is admissible. The reason for this rule is apparent; the principal object in awarding punitive damages is to punish the defendant, and thus deter him from further wrongdoing, and a small sum would not be felt by a defendant of large wealth. The vengeance of the law would scarcely be appreciated unless the damages were fixed in some appreciable sum. In other words, in awarding exemplary or punitive damages, the wealth of the defendant may be shown in order that the jury may know what his wealth is, and thereby determine what amount will be punishment to him. * * *"

The trial court allowed the jury to consider the wealth of appellant in connection with the question of punitive damages. Thereafter, the award of punitive damages was within the discretion of the jury. The jury weighed all the evidence and made a determination. That was the prerogative of the jury. The fact that the jury was allowed to consider the financial statement was not error.

The appellant's third assignment of error is not well taken.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and HOLMES, JJ., concur.