**DOMO, Appellee,**

v.

**STOUFFER, Appellant.**

[Cite as *Domo v. Stouffer* (1989), 64 Ohio App.3d 43.]

Court of Appeals of Ohio,
Ottawa County.

No. OT–88–42.

Decided Sept. 1, 1989.

44

*Marvin Karp*, for appellee.

*Eric Zalud* and *Edward Kancler*, for appellant.

Abood, Judge.

This is an appeal from a decision of the Ottawa County Court of Common Pleas in which plaintiff-appellee, John M. Domo, was granted judgment in the amount of $1,656,149 against defendant-appellant, James V. Stouffer, for breach of a stock purchase agreement. Appellant sets forth three assignments of error.

"I. The trial court committed prejudicial error by failing to find that Domo owed Stouffer a fiduciary duty, which Domo breached.

"II. The trial court committed prejudicial error by failing to apply the preponderance of the evidence standard to Stouffer's common law fraud claim. Had it applied the preponderance of the evidence standard, the trial court would have found that Stouffer proved all the requisite elements of common law fraud by a preponderance of the evidence.

"III. The trial court committed prejudicial error in not rescinding the stock purchase agreement because fraud sufficient to rescind that agreement was conclusively demonstrated by the manifest weight of the evidence. Thus, Stouffer met the clear and convincing standard."

The facts that are relevant to the issues on appeal are as follows: In the early fall of 1984, appellee owned and operated a condominium development

known as Le Marin Condominiums at Catawba Island in Port Clinton, Ohio. This planned community which appellee was in the process of developing further consisted of condominiums, boat docks, a club house, a marina, and a beach.

Appellant at that time was the chief operator of the Catawba Island Club, a private resort club that was located a short distance to the north of the Le Marin development. Both parties had an interest in purchasing the property located between them, either for further development or for resale, and in late winter or early spring of 1984 appellant contacted appellee and proposed that they work together to acquire and possibly develop it. As a result of that proposal, on October 4, 1984, the parties entered into an agreement by which a Subchapter S corporation was created named Promontory, Inc. and later renamed Catawba West, Inc., with appellant and appellee each holding a fifty percent interest therein. The stated purpose of the corporation was the acquisition, ownership, development, construction, lease, sale, operation and management of property in what was referred to as the "venture area." The agreement specifically provided, however, that the Catawba Island Club and the Le Marin community were to be kept separate from this agreement and the financial data of each was not to be shared.

As the corporation began acquiring properties, there was some general discussion between the parties as to future development of condominiums, a hotel, a marina, a health spa, offices, retail area and a golf club. An architect was engaged to outline some preliminary concepts, and in the latter part of 1985, the parties hired the accounting firm of Arthur Young for the purpose of compiling data for a prospectus to be used in approaching lending institutions to procure financing for the new development which was to be called Catawba West. Together the parties supplied estimated cost information to Arthur Young with appellee providing information as to the condominiums, the hotel and the spa, and appellant providing information as to the marina, bay area and the golf club. In early 1986, the parties presented the completed prospectus to both Toledo Trust and Society Bank in an attempt to obtain financing for the project which was to begin with construction of a condominium development on a parcel known as the Bluffs; however, both institutions turned them down.

Not long thereafter, appellee approached appellant and indicated that he was tired of his daily commute from Cleveland and that he had decided that he wanted to return to Cleveland to start a family and be near his ill father. Appellee informed appellant at that time that he was having some difficulty with the bank that was financing his Le Marin development. Appellee indicated that a third party was interested in purchasing his fifty percent

interest in Catawba West, Inc., and mentioned a potential figure of $3,500,000. After reviewing the Arthur Young prospectus and going over the figures and projections, especially for the Bluffs condominium project, appellant offered to purchase appellee's fifty percent interest for $2,500,000.

On March 8, 1986, the parties executed a stock purchase agreement under the terms of which appellee would sell his fifty percent interest in Catawba West to appellant for $2,500,000, contingent only upon appellant's success in obtaining certain zoning variances, with an initial down payment of $500,000 and the balance to be paid in installments over a four and one-half year period. The initial payment of $500,000 was made upon execution of the agreement. The first installment payment in the amount of $250,000 came due on October 10, 1986, but appellant failed to make the payment. After several verbal extensions, the parties executed a formal written agreement whereby appellant was granted an extension to January 30, 1987, to pay the past due installment of $250,000 with interest at nine percent per annum from October 10, 1986. Under the agreement, appellant was also to pay a $30,000 extension fee and a $500 legal fee by January 30, 1987. The extension agreement also provided for acceleration of all amounts due under the stock purchase agreement in the event appellant defaulted on the payments due January 30, 1987. Upon execution of the agreement, appellant was to pay the accrued interest on the $250,000 from October 10, 1986 to the date of execution. On January 30, 1987, appellee received $5,000 from appellant with no other payments being made.

On May 4, 1987, appellee filed a complaint against appellant for money only, alleging breach of both the stock purchase agreement and the extension agreement and requesting judgment for the entire sum due, discounted to present value. On June 19, 1987, appellant filed his answer and a counterclaim alleging that appellee had breached the agreements and his fiduciary duty to appellant and claiming further that appellee had made false representations to him throughout performance of their initial agreement upon which he relied to his detriment, inducing him to enter into the stock purchase agreement. Appellant prayed for dismissal of appellee's complaint, rescission of the stock purchase agreement and the extension thereto, retention of all amounts paid to appellee, return to status quo and for injunctive relief enjoining appellee from exercising any right in connection with certain golf club memberships.[1] On February 23 and 24, 1988, the case proceeded to trial to the court at the conclusion of which the parties submitted post-trial briefs.

---

1. On July 20, 1987, appellee also filed a motion for preliminary injunctive relief to enjoin appellant from consummating any pending sales of equity memberships in the proposed Winberie Golf Club at Catawba West. Thereafter, appellee filed an amended motion for

On August 2, 1988, the trial court entered its findings of fact and conclusions of law, opinion and judgment entry. The trial court held that appellant failed to prove by clear and convincing evidence any fraudulent misrepresentation and/or concealment and, therefore, was not entitled to rescission of the stock purchase agreement and the extension agreement. The trial court also found that appellant failed to prove the existence of any fiduciary relationship or that any special trust or confidence had been reposed between the parties. Finally, the trial court found that pursuant to the stock purchase agreement and the extension thereto, appellee was entitled to judgment in his favor in the amount of $1,656,149 plus prejudgment interest at the rate of ten percent per annum from January 30, 1987. Judgment was also entered for appellee and against appellant on his counterclaim. From this decision, appellant has filed his appeal.

In his first assignment of error, appellant asserts that the trial court's finding that there was no fiduciary relationship between the parties was against the manifest weight of the evidence. Appellant argues that evidence of a fiduciary relationship is seen in the fact that the parties were engaged in a joint venture, that there were disparate levels of experience between the parties resulting in appellant reposing special confidence and trust in appellee and that it was provided for by the terms of the October 4, 1984 agreement between the parties.

■ The law is clear that if a judgment is supported by some competent, credible evidence as to all of the essential elements of the case, there should not be a reversal by the reviewing court as being against the weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Considering first appellant's assertion that the parties were engaged in a joint venture, this court notes that this specific issue was not raised by appellant at trial; however, since both parties have addressed this issue here, we will consider it.

■ A joint venture arises from a contractual association of parties with a common purpose of carrying out a single business venture for mutual profit, for which the parties combine their efforts, property, skill and knowledge, without creating a partnership or corporation. *Kahle v. Turner* (1979), 66 Ohio App.2d 49, 20 O.O.3d 111, 420 N.E.2d 127; *Walter Brick & Clay Products Co. v. Cochran* (App.1934), 17 Ohio Law Abs. 206. Joint ventures

preliminary injunction and for appointment of a receiver for the assets of Catawba West, Incorporated. After a hearing on the matter, the trial court denied the motion for preliminary injunctive relief.

have been distinguished from more formal relationships such as partnerships since the former relate to a single transaction as opposed to a continuing business. *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E. 209; *Union S. & L. Co. v. Cook* (1933), 127 Ohio St. 26, 186 N.E. 728.

■ Despite the fact that both parties, throughout the proceedings below, refer generally to their business relationship as a joint venture, the evidence in the record unequivocally establishes that the corporation created by the parties' October 4, 1984 agreement was created for the purpose of conducting an ongoing business as opposed to a single transaction. Therefore, by legal definition, the parties were not engaged in a joint venture.

■ Considering next appellant's remaining assertions in support of his first assignment of error, the definition of a "fiduciary relationship" is set forth in *In re Termination of Emp.* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609.

"A 'fiduciary relationship' is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust."

Although fiduciary obligations may be created from an informal relationship, this can only be the case where both parties understand that a special trust or confidence has been reposed. *Umbaugh Pole Bldg. Co. v. Scott* (1979), 58 Ohio St.2d 282, 12 O.O.3d 279, 390 N.E.2d 320; *Stone v. Davis* (1981), 66 Ohio St.2d 74, 20 O.O.3d 64, 419 N.E.2d 1094.

■ We find no evidence in the record that both parties understood that appellant was placing any special confidence or trust in any superior skills or expertise possessed by appellee. Upon examination of the language thereof, it is clear that no such provision was placed in the stock purchase agreement executed by the parties on October 4, 1984. From our review of the entire record, we find that there exists competent, credible evidence to support the trial court's finding that there was no fiduciary relationship between the parties. Accordingly, appellant's first assignment of error is found not well taken.

In his second assignment of error, appellant asserts that the trial court committed prejudicial error by failing to apply the preponderance of the evidence standard of proof to appellant's common-law fraud claim. While appellant acknowledges that the trial court properly applied the clear and convincing standard of proof to his claim for equitable rescission based on fraud, appellant submits that he also made a claim for damages at law based on fraud and that as to that claim, the preponderance of the evidence is the

proper standard to be applied. Appellant argues that the trial court erred by applying the clear and convincing standard to both claims.

■ The law is clear that the evidence necessary to sustain a finding of fraud as a basis for equitable rescission or reformation of a written agreement must be clear and convincing. *Morris v. Investment Life Ins. Co.* (1969), 18 Ohio App.2d 211, 47 O.O. 349, 248 N.E. 216; *Manning v. Len Immke Buick* (1971), 28 Ohio App.2d 203, 57 O.O. 308, 276 N.E.2d 253. However, in an ordinary action at law for money owing based upon fraud, a preponderance of the evidence is sufficient to prove such fraud. *Household Finance Corp. v. Altenburg* (1966), 5 Ohio St.2d 190, 34 O.O. 348, 214 N.E.2d 667; *Manning, supra.*

Appellant's counterclaim alleged that fraud on the part of appellee induced him to entered into the stock purchase agreement and the extension agreement and requested that he be granted the equitable remedy of rescission and recoupment of all amounts paid pursuant to the stock purchase agreement. Appellant's counterclaim also alleged common-law fraud on the part of appellee and requested benefit-of-the-bargain damages.

■ In considering this assignment of error, this court has thoroughly examined the pleadings, the transcript of the testimony, the physical evidence presented and the post-trial briefs of the parties. When considering the evidence presented and appellant's post-trial brief in relationship to his pleadings, we can only conclude that appellant's two claims of fraud were narrowed by the evidence presented to one claim for equitable rescission and recoupment only. Since the substance of appellant's evidence and arguments were only as to that issue, the trial court, based upon the evidence presented, focused its decision solely on appellant's claim of fraud as the basis for rescission of the stock purchase agreement and, therefore, properly applied only the clear and convincing standard of proof to the evidence presented. Accordingly, appellant's second assignment of error is found not well taken.

In his third assignment of error, appellant asserts that the trial court's finding that he failed to prove fraud by clear and convincing evidence was against the manifest weight of the evidence. Appellant argues that there is clear and convincing evidence in the record that appellee engaged in an ongoing, continuing pattern of deception and misrepresentation, including the concealment of losses and misrepresentation of profits of his Le Marin development, both prior to and after the execution of the October 4, 1984 agreement. Appellant argues further that appellee inflated the profits and deflated the actual construction costs of Le Marin solely to induce appellant to enter into the stock purchase agreement.

██ In order to maintain an action for fraud, the following elements must be proved: (1) an actual or implied misrepresentation or concealment of a matter of fact which relates to the present or past, and which is material to the transaction; (2) knowledge of the falsity or such utter disregard and recklessness toward the truth or falsity of the representation that knowledge may be inferred; (3) intent to mislead another into reliance; (4) actual, justified reliance; and (5) a resulting injury. *Friedland v. Lipman* (1980), 68 Ohio App.2d 255, 22 O.O.3d 422, 429 N.E.2d 456, paragraph one of the syllabus.

 In reviewing the judgment of the trial court as to appellant's claim of fraud, we cannot substitute our judgment for that of the trial court. It was the function of the judge, as the finder of fact, to observe the demeanor of the witnesses, examine the evidence and weigh the credibility of the testimony and evidence presented. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Our role is limited to a review of the record to determine if the trial court's judgment was supported by competent, credible evidence going to all the essential elements of the case, while being guided by the presumption that the findings of the trier of fact were correct. *Seasons Coal, supra; C.E. Morris, supra.*

██ Applying the above standard, we find that there was competent and credible evidence to support the trial court's findings that appellant failed to prove by clear and convincing evidence, any fraudulent misrepresentation or concealment entitling him to rescission of the stock purchase agreement and the extension thereto. Accordingly, appellant's third assignment of error is found not well taken.

On consideration whereof, this court finds that substantial justice has been done the party complaining and the judgment of the Ottawa County Court of Common Pleas is affirmed. Costs assessed to appellant.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.