DECISION AND JOURNAL ENTRY
{¶ 1} Appellants, Steven ("Steven") and Jean ("Jean") Subichin (together, "Appellants"), appeal a judgment from the Summit County Court of Common Pleas, which found for Appellees ("Yuskos") on the issue of breach of contract and fraud in connection with the sale of a parcel of real estate. We reverse and remand
 I. {¶ 2} On or about August 26, 2001, Appellants and Yuskos entered into a real estate contract; Yuskos were the sellers, and Appellants were the buyers. The purchase agreement contract contained certain provisions, which state in pertinent part:
"3) DEPOSIT Buyer has deposited with Broker the sum receipted above, which shall be returned to Buyer, upon Buyer's request, if no contract has been entered into. Upon acceptance of this contract by both parties, Broker shall deposit such amount in its trust account to be disbursed, subject to collection by Broker's depository, as follows: (a) if Seller fails or refuses to perform, or any contingency is not satisfied or waived, the deposit shall be returned[.]"
"* * *.
"16) Inspection Seller does not warrant the property or any of its structures, systems, or appliances. BUYER shall have the right to inspect the property with any qualified professional(s) BUYER chooses and to order and review a Preliminary Title Report, at BUYER'S sole election and expense, within 14 days after Acceptance. If BUYER is not satisfied with the inspection and/or title reports, and BUYER so notifies SELLER in writing within the inspection period, then SELLER may either 1) correct the unsatisfactory conditions or 2) void this Agreement whereupon earnest monies on deposit shall be returned to BUYER. BUYER may waive any defects and accept the property AS IS. If BUYER does not inspect, inspection is waived and BUYER takes the property AS IS. After inspection and correction, if any, BUYER accepts property AS IS. This inspection is not for discovery of cosmetic or other visual deficiencies, or to bring the property up to building codes." (Emphasis sic.)
 {¶ 3} The purchase agreement was signed by both Appellants.
 {¶ 4} In a document dated September, 6, 2001, Appellants presented Yuskos with a list of requested "repairs and/or corrections." The list included several requested repairs which were completed and are not at issue in this appeal; the item that is at issue is a request for "[w]ater proofing and repair of interior/exterior basement walls by a company agreeable to both buyer and seller." This document was signed by both Appellants.
 {¶ 5} Yuskos responded with a document titled "Addendum A1"; it is dated September 17, 2001. It states in pertinent part:
"This release provides for the acknowledgment of satisfaction, exception and/or waiver of terms or contingencies as provided in the Agreement for purchase and sale of Real estate, dated Aug. 26, 2001[,] between: Rick and Dianne Yusko: Seller [and] Steven and Jean Subichin: Buyer.
"Property located at 4527 Diplomat, Stow, Ohio 44224[.] (Emphasis sic.) "Exceptions: Buyer has exercised their right to complete an inspection or inspections on said property. Buyer hereby requests seller to complete the following repairs and/or corrections:
"All other terms of this agreement are the same:
"1. Seller agrees to give buyer a credit toward points/closing cost/or prepaid in the amount of $2000. Buyer accepts property/basement foundation in `as is' condition."
 {¶ 6} Yuskos and Steven signed the document; however, Jean refused. As a result, the transfer of the real estate was not consummated.
 {¶ 7} Subsequently, Yuskos brought a cause of action for breach of contract, detrimental reliance, and fraud. Appellants counterclaimed stating that the "agreement is void and * * * earnest monies are due and owing [Appellants]."
 {¶ 8} Prior to trial, on June 13, 2002, Appellants filed a motion for summary judgment claiming that because Yuskos did not meet the terms of the inspection clause, Appellants had the right to void the contract under the terms of the inspection clause. Yuskos responded, arguing alternatively that the request for repairs was not received within the fourteen day time period, and that Steve had the apparent authority to bind Jean when he signed Addendum A1. The trial court denied the motion, stating that there was an issue of material fact concerning Steve's apparent authority to bind his wife when he signed Addendum A1.
 {¶ 9} The matter proceeded to a jury trial. After the close of evidence, and before the jury took the case, Appellants moved for summary judgment on the fraud and apparent authority issues. In support of the motion, Appellants argued that there was no testimony proving the elements of fraud, and because this was a breach of contract cause of action, fraud should be removed from the jury. Yuskos responded that they would not drop the fraud allegation unless Appellants conceded that Steven had the authority to sign Addendum A1 for his wife. The court, treating the motion as one for directed verdict, denied the motion on both issues.[1]
 {¶ 10} The jury found for Yuskos, and awarded compensation of $20,000 for breach of contract and detrimental reliance, and $2,500 for fraud. Appellants filed a motion for a new trial pursuant to Civ.R. 59, claiming that Jean was medically impaired at the time of the trial. The trial court denied the motion the "court does not find that the stated reason offered by [Appellants] meets the rule as a ground upon which a new trial is warranted."
 {¶ 11} Appellants timely appealed, raising six assignments of error. We rearrange and consolidate some assignments of error for ease of discussion.
 II. Assignment of Error No. 2
"B. No contract existed between appellants and appellees."
 Assignment of Error No. 3
"C. The finding by the court of fraud is contrary to law."
 Assignment of Error No. 4
"D. The trial court erred as a matter of law in not granting a directed verdict."
 {¶ 12} We begin by reiterating that Appellants did not make a motion for a directed verdict per se; rather, at the close of evidence, Appellants made an oral motion for summary judgment on the fraud and apparent authority issues. The trial court heard arguments on the issue, and in denying the motion, treated it as a motion for a directed verdict. Therefore, we do the same.
 {¶ 13} Whether a trial court properly granted or denied a motion for directed verdict presents a question of law, which we review de novo. Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257 appeal not allowed (2000), 90 Ohio St.3d 1472. A motion for a directed verdict tests the sufficiency of the evidence, not the weight of the evidence or the credibility of witnesses. Wagner v. Roche Laboratories (1996),77 Ohio St.3d 116, 119-120. In ruling on a motion for a directed verdict, the trial court must construe the evidence most strongly in favor of the non-moving party. Posin v. A.B.C. Motor Court Hotel (1976),45 Ohio St.2d 271, 275. When the party opposing the motion has failed to produce any evidence on one or more of the essential elements of a claim, a directed verdict is appropriate. Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. However, where there is substantial evidence upon which reasonable minds may reach different conclusions, the motion must be denied. Posin, 45 Ohio St.2d at 275.
 {¶ 14} Our analysis begins with a determination of the status of the documents involved. The parties concede that the purchase agreement was signed by all interested parties, that is, the Appellants and the Yuskos. Under the inspection clause, Appellants had the right to request repairs and the Yuskos had the right, in return, to either make the repairs or void the agreement. Appellants made a request for repairs; upon its receipt, the Yuskos presented Addendum A1. Addendum A1 was an attempt by the Yuskos to modify their duties under the purchase agreement; the purchase agreement did not give the Yuskos the option of paying money in lieu of repairs. The purchase agreement modification was acceptable to Steven, but not to Jean.
 {¶ 15} The Yuskos take the position that the contract was successfully modified in either of two ways; either Steven had the apparent authority to bind Jean when he signed Addendum A1, or Steven fraudulently misrepresented that he had such authority. Appellants argue that the contract was not modified, and they did not breach the purchase agreement in exercising the rights the agreement bestowed upon them.
 THE ISSUE OF APPARENT AUTHORITY {¶ 16} The existence of an agency relationship is a question of fact, rather than one of law. McSweeney v. Jackson (1996),117 Ohio App.3d 623, 631. If any evidence of an agency relationship between plaintiff and her husband was presented, the trial court properly denied plaintiff's motions which sought to resolve the issue as a matter of law.
 {¶ 17} The criteria for apparent authority is stated in Logsdon v.The ABCO Construction Co. (1956), 103 Ohio App. 233, 241:
"This authority to act as agent may be conferred if the principal affirmatively or intentionally, or by lack of ordinary care, causes or allows third persons to act on an apparent agency. It is essential that two important facts be clearly established: (1) That the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority. The apparent power of an agent is to be determined by the act of the principal and not by the acts of the agent; a principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of the authority and not where the agent's own conduct has created the apparent authority."
 {¶ 18} No presumption of agency between a husband and wife arises based merely upon their marital relationship. McSweeney v. Jackson
(1996), 117 Ohio App.3d 623, 631; Sowers v. Birkhead (1958),108 Ohio App. 507, 512. Although marriage in itself does not create an agency relationship between a husband and wife, an agency can exist within the context of a marriage. See, e.g., Ameritech Publishing, Inc.v. Jenkins (Aug. 25, 1993), 2d Dist. No 13698 (determining a husband gave apparent authority to his wife to authorize an advertisement by suggesting that a saleswoman call his wife and "she will handle it").
 {¶ 19} The record is completely devoid of any evidence that Jean, as the principal, affirmatively, intentionally, or by lack of ordinary care, caused or allowed Steven to act on an apparent agency, nor is this argued. To the contrary, Yuskos argued that it was Steven who so held himself out as an agent. Therefore, whereas it is a factual matter whether or not Jean established an agency relationship, the Yuskos' argument that agency was established solely by Steven's actions is contrary to law. A directed verdict on this issue, based upon the evidence presented at trial, should have been granted as a matter of law.
 THE ISSUE OF FRAUD {¶ 20} In the third assignment of error, Appellants argue that the alleged fraud "was a representation by Steven Subichin that he had authority to bind his wife to the contract." Appellees contended that when Steven signed Addendum A1, he also bound his wife on the theory of apparent authority; if such is not the case, then Steven acted fraudulently when he represented that he did have such authority. Appellants contend that the Yuskos did not prove the elements of fraud and, therefore, the jury's finding of fraud is contrary to law.
 {¶ 21} In order to establish a claim for fraud, one must prove each of the following elements:
"(a) a representation or, where there is a duty to disclose, concealment of a fact,
"(b) which is material to the transaction at hand,
"(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
"(d) with the intent of misleading another into relying upon it,
"(e) justifiable reliance upon the representation or concealment, and
"(f) a resulting injury proximately caused by the reliance." Burr v.Stark Cty. Bd. of Comm'rs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus, citing Cohen v. Lamko, Inc. (1984), 10 Ohio St.3d 167, 169.
 {¶ 22} "An action in fraud will only be found if all of the elements are present and "`[t]he absence of one element is fatal to recovery.'" Westfield Ins. Co. v. Huls Am., Inc., (1998),128 Ohio App.3d 270, 296, quoting Manning v. Len Immke Buick (1971),28 Ohio App.2d 203, 205. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Civ.R. 9(B). This requirement for particularity has been interpreted to include three requirements: (1) the plaintiff must specify the alleged false statement; (2) the complaint must state the time and place the statement was made; and, (3) the plaintiff must identify the defendant who made the statement. Korodi v. Minot (1987), 40 Ohio App.3d 1,4, 531 N.E.2d 318; Johnson's Janitorial Serv. V. Alltel Corp. (1993),92 Ohio App.3d 327, 329.
 THE VARIOUS CLAIMS OF FRAUD {¶ 23} The pleadings state:
"17. Throughout their contact with the [Yuskos] and by their verbal statements and acts until mere days before closing, [Appellants] represented to [Yuskos] that they would honor their obligation under the Contract;
"18. Said representations were false when made by the [Appellants];
"19. [Appellants] made said representations with either knowledge of their falsity or with reckless disregard for their truthfulness;
"20. Said representations were made by [Appellants] with the intention of misleading the [Yuskos] into reliance upon said representations;
"21. The [Yuskos] did not know the truth of the [Appellants'] intentions, and did in fact justifiably rely upon the representations made by Defendants as to their intentions;
"22. [Appellants'] actions were done with fraudulent intent, malice and wanton disregard for the legal rights of the [Yuskos];
"23. As a direct and proximate result of their detrimental reliance upon the fraudulent misrepresentations of the [Appellants], the [Yuskos] have been damaged and will continue to be damaged in an amount to be more fully set forth at trial."
 {¶ 24} The record indicates that the jury was given the following instructions regarding fraud:
"The [Yuskos] claim that the [Appellants] committed fraudulent acts against the [Yuskos] upon which the plaintiffs relied to their damage. Specifically, [Yuskos] claim that the [Appellants] were dishonest about their intention to purchase the home at issue.
"Fraud is a civil wrong. It is a deception practiced with a view to gaining an unlawful and unfair advantage. Fraud is a false representation of fact, whether by words, conduct or concealment, which misleads and is intended to mislead another so that he relies on it to his injury.
"The [Yuskos] must prove by clear and convincing evidence each of the following elements:
"A false representation of fact was made with knowledge of its falsity or with utter disregard and recklessness about its falsity that knowledge may be found, or the representation/concealment was material to the transaction; the representation or concealment was made with the intent of misleading the plaintiffs into relying upon it; the [Yuskos] were justified in relying on the representation or concealment and did, in fact, so rely; and the plaintiffs were damaged and the damages were directly caused by their reliance on the representation or concealment.
"The representation must be material; that is, it must be important to the transaction and have an influence over it.
"A representation is made with utter disregard and recklessness when the person who makes the representation is careless or indifferent to the consequences or the risk that the representation will cause the person to whom it is made to do or not to do certain things. If a person had no knowledge of a fact but asserted it as true when it was false, you may find that he made the representation with utter disregard and recklessness. A representation recklessly made without knowledge of the truth is the same as a false representation knowingly made.
"There is justifiable reliance in a representation or concealment when a person of ordinary care would rely upon it under the same or similar circumstances.
"If a person has a duty to speak, he must make a full and fair disclosure of the material facts. A partial disclosure is a concealment and may be found — may be fraud.
"Fraud must be proved by clear and convincing evidence.
"Clear and convincing evidence is that evidence must be more than simply a greater weight of the evidence than that opposed to it. It must produce in your minds a firm belief or conviction about the facts to be proved and the truth of the matter."
 {¶ 25} The jury instructions, wherein it is stated that the fraud alleged lies in the Appellants' intent to dishonor their obligations under the purchase agreement, is consistent with the claim of fraud pled in the complaint. The jury instructions are, however, inconsistent with later statements of which acts constituted the fraud.
 {¶ 26} At the close of all the evidence, Appellants made the motion on the issue of fraud, claiming there was no evidence of a false representation of material fact, and no knowledge of such on the part of Appellants. Further, Appellants argued that there was no evidence that Yuskos were damaged by Appellants' actions. In response, Yuskos claimed that there was misrepresentation as to "whether Steven Subichin had the authority to act on behalf of his wife at the time he signed" Addendum A. The court specifically asked the Yuskos' counsel, "So what do you say the fraud is?" Yuskos' counsel responded:
"The fraud was Mr. Subichin's representation that he had the authority at the time he signed [Addendum A] to speak for his wife. * * * There was a misrepresentation about Mr. Subichin having authority when they're now claiming he didn't. If they'll concede he had authority to sign on behalf of his wife, then I guess we would drop the fraud count."
 {¶ 27} At any rate, the trial court denied the motion for directed verdict on the issue of fraud, and the jury ultimately found for Yuskos and against Appellants on that issue.
 {¶ 28} The claim of fraud is further complicated by jury instructions given for the claim of "detrimental reliance":
"The [Yuskos] claim that they relied to their detriment upon the representations of the [Appellants]. If you find that the [Appellants], through their conduct, made representations to the [Yuskos] about their representation to purchase the home at issue, and if you find that the [Yuskos] were justified in relying upon the representations made by the [Yuskos] — excuse me, made by the [Appellants], and if you find that the [Appellants'] representations were not true, then you may find for [Yuskos] on their claim of detrimental reliance.[2]
 ANALYSIS OF THE FRAUD CLAIMS {¶ 29} At trial, Rick Yusko testified: there was mold on the walls of the basement, but he didn't mention any water problems in the basement because he never saw any; the parties signed the purchase agreement, and Appellants exercised their option to get an inspection and make demands for corrections; Yuskos repaired everything but the waterproofing in the basement; Yuskos called Steven back to the property out for an inspection; Steven expressed satisfaction and signed Addendum A1; and, Steven said he did not have to check with Jean before he signed it.
 {¶ 30} The real estate selling agent for the Yuskos, Anthony Mazzarella, testified that it was his impression that Appellants were using the waterproofing to get out of the purchase agreement. An objection to that statement was sustained. The agent testified that the purchase agreement gave the right to inspect and ask for repairs, and that he had no reason to doubt that Steven was acting for his wife when he signed Addendum A1, although no power of attorney was ever presented in this case.
 {¶ 31} The realtor for Appellants, Terry Aikens, testified that Steven would do most of the negotiating and communicating, but then would speak to his wife before telling Aikens what to do. Aikens also testified that both Appellants were buying the property and that Jean never signed Addendum A1.
 {¶ 32} Jean Subichin testified that the mold in the basement was an issue for her due to the health problems of her and her son, and that it was her understanding that the purchase agreement would not go through if the inspections revealed a problem. She further stated that Aikens said that the Yuskos refused to waterproof the basement and would sue for lack of good faith negotiation. She testified that Steven said he would discuss the matter with the Yuskos, that she never authorized Steven to act for her, that she did not sign Addendum A1 and did not intend to, and that the mold and water problems in the basement were not disclosed prior to the inspection.
 {¶ 33} Steven testified that he faxed the request for repairs to Aikens on Sept. 6 or 7, and that Aikens immediately called him at work to say Aikens thought the demand for waterproofing was unreasonable, and the Yuskos were not agreeable to it. According to Steven, Aikens suggested offering the money in lieu of repairs, and that Steven didn't tell Aikens that Jean was in agreement with that. Steven testified that he actually told Aikens that Steven would have to contact Jean to discuss it. Further, Steven averred that there was no agreement that he was permitted to sign for Jean, and when Jean wouldn't agree to accept the modification offer, Steven asked for the return of the earnest money. Steven said that Appellants did not delay in seeking financing, and that Aikens directed them to Charter One, where Appellants applied for a mortgage the next business day. Steven was asked on re-cross why both realtors testified they were under the impression Steven was acting on his wife's authority.[3] Steven responded that the agents had a vested interest in the sale and they were motivated to sell and close. Steven was the final witness to testify.
 {¶ 34} The averment to the court that the fraud in this case was Steven's indication that he could sign for his wife and bind her to Addendum A1, was made outside the presence of the jury. This claim of fraud was not pled, nor was it included in instructions given to the jury. Nonetheless, it was raised before the trial court in response to Appellants' motion at the close of the evidence. The evidence is scant to support that Steven made this misrepresentation. Even assuming arguendo that Steven acted fraudulently in representing that he had the authority to bind his wife, any reliance upon the misrepresentation is unreasonable given the law of apparent authority as discussed above. Yuskos had no basis upon which to rely upon the misrepresentation when only the principal, Jean, could have conferred the authority. As the claim that Steven acted fraudulently on the question of apparent authority was neither pled nor proved, a directed verdict on this argument should have been granted.
 {¶ 35} As to the larger issue of fraud, whether both Appellants acted fraudulently when expressing intent to purchase the property, this court finds there was no evidence to support the jury's verdict. Appellants, pursuant to the inspection clause, exercised their right to have an inspection and request repairs. The Yuskos were required to either make the repairs or void the agreement. The Yuskos did neither, and instead attempted to modify the contract. The modification was not enacted because Jean did not agree, and Steven did not have the authority to bind her. Therefore, Appellants requested the return of the earnest money, pursuant to Section 3 the purchase agreement. Appellants did not attempt to exert any rights not given them by the purchase agreement. There is a complete lack of evidence in the record that the Appellants pursued the purchase agreement falsely, with knowledge of the falsity, or with such utter disregard and recklessness as to allow an inference of knowledge, with the intent to mislead. Appellants were following the dictates of the purchase agreement; it was the Yuskos who attempted to modify their duties under the agreement.
 THE ISSUE OF BREACH OF CONTRACT {¶ 36} As stated above, Appellants acted in accordance with the terms of the purchase agreement. They requested repairs which were permissible in the inspection clause; when the repairs were not effectuated, they requested their earnest money be returned pursuant to Section 3 of the purchase agreement. On the other hand, the purchase agreement allowed the Yuskos to either make the repairs or void the agreement. The Yuskos did neither, but instead attempted to modify their duties. Jean refused the modification offer, requiring Yuskos to perform pursuant to the agreement. Since Yuskos did not perform, the purchase agreement did not oblige Appellants to any further action. Therefore, the jury's finding of breach of contract on the part of Appellants is contrary to the evidence and to the terms of the contract.
 {¶ 37} Appellants' second, third, and fourth assignments of error are affirmed.
 Assignment of Error No. 1
"A. The trial court erred in not granting the motion for summary judgment."
 Assignment of Error No. 5
"E. The jury verdict is inconsistent."
 Assignment of Error No. 6
"F. The jury awarded damages in excess of what was allowed by law."
 {¶ 38} Because our disposition of the second, third and fourth assignments of error render these last three moot, we decline to address them. App.R. 12(A)(1)(c).
 III. {¶ 39} Appellants' second, third, and fourth assignments of error are affirmed. The remaining three assignments of error are moot. The judgment of the Summit County Court of Common Pleas is reversed and the cause is remanded for further action consistent with this opinion.
Judgment reversed and the cause remanded.
Slaby, P.J., Batchelder, J. concur.
[1] "A party may move for summary judgment at any time after the expiration of the time permitted under these rules for a responsive motion or pleading by the adverse party, or after service of a motion for summary judgment by the adverse party." Civ.R. 56. A motion for summary judgment at the close of evidence at trial is made out of rule.
[2] "Detrimental reliance" is an element of promissory estoppel. "[T]he claim of detrimental reliance is grounded in the equitable doctrine of promissory estoppel which has been defined as: `A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided by enforcement of the promise.'" Carnahan v. Goltare (2001), 6th Dist. No. WM-01-001, quoting Talley v. Teamsters Local No. 377 (1976), 48 Ohio St.2d 142,146. A successful claim in promissory estoppel does not necessarily depend upon deliberate misrepresentations.
[3] Actually, only the Yuskos' realtor, Mazzarella, so testified. The record does not contain such a statement made by Aikens.