[Cite as *Trumbull Twp. Bd. of Trustees v. Rickard*, 2017-Ohio-8143.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| BOARD OF TRUMBULL TOWNSHIP TRUSTEES, et al., | : | **O P I N I O N** |
| | : | |
| Plaintiff-Appellant, | : | **CASE NOS. 2016-A-0044** |
| | : | **2016-A-0045** |
| - vs - | : | |
| LAWRENCE RICKARD, et al., | : | |
| Defendants/Cross-Claim Defendants-Appellees, | : | |
| | : | |
| STATE OF OHIO ex rel. ATTORNEY GENERAL MIKE DeWINE, | : | |
| Defendant/Cross-Claim Plaintiff-Appellant. | : | |

Civil Appeals from the Ashtabula County Court of Common Pleas.
Case No. 2008 CV 0925.

Judgment: Affirmed.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Catherine R. Colgan*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellant).

*Grant J. Keating* and *Erik L. Walter*, Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Defendants/Cross-Claim Defendants-Appellees).

*Mike DeWine*, Ohio Attorney General; *C. Patrick Denier* and *Lauren D. Emery*, Assistant Attorneys General, 150 East Gay Street, 23rd Floor, Columbus, OH 43215 (For Defendant/Cross-Claim Plaintiff-Appellant).

TIMOTHY P. CANNON, J.

**{¶1}** Appellants, Board of Trumbull Township Trustees ("the Board") and State of Ohio ex rel. Attorney General Mike DeWine ("the Attorney General"), appeal from a judgment entered on July 11, 2016, by the Ashtabula County Court of Common Pleas, following a damages hearing, against appellees, Lawrence Rickard and Phoenix Productions LLC ("Defendants"). For the reasons that follow, the trial court's judgment is affirmed.

## Procedural History

**{¶2}** This case originated on July 3, 2008, when the Board filed a complaint against Appellee Lawrence Rickard, various John Does, and ABC companies. The Board named, as involuntary plaintiffs, Trumbull Township Volunteer Fire Department, Inc. ("the Fire Department") and Trumbull Township Fire and Rescue Auxiliary, Inc. ("the Auxiliary"). The complaint states that the Fire Department is a nonprofit corporation and charitable trust, recognized under R.C. 109.23 and R.C. 1716.01 et seq., inuring to the exclusive benefit of Trumbull Township as stipulated in a settlement agreement that resolved disputes between the Board and the Fire Department. As a result of this settlement agreement, the Board became the successor in interest to any claims the Fire Department may have, known or unknown, against third parties. The Auxiliary is also a nonprofit corporation and a charitable trust inuring to the exclusive benefit of Trumbull Township.

**{¶3}** The Board's complaint alleged claims related to charitable trust assets and, therefore, named the Attorney General as a necessary and indispensable party-defendant, pursuant to R.C. 109.25. The Attorney General filed an answer and a cross-

2

claim against Defendants on behalf of various charitable trusts, pursuant to R.C. 109.24.

{¶4} The Board and the Attorney General were subsequently granted leave to amend their pleadings to substitute Phoenix Productions, LLC as a party defendant for the previously unnamed ABC, LLC. They allege Phoenix Productions was formed in 2002 at the direction of Rickard, who then transferred a legal or equitable interest in certain of his assets into the limited liability company.

{¶5} Defendants operate and have an interest in the Great Lakes Medieval Faire ("the Faire") located in Rock Creek, Ohio, which is open on certain weekends each summer. Defendants allowed for the sale of beer at the Faire, utilizing temporary Class F permits obtained from the state of Ohio. *See* R.C. 4303.20 and R.C. 4303.202. From 1994 through 2002, the Fire Department operated the beer concession. In 2003, the Montville Volunteer Fire Department ("Montville Fire") operated the beer concession. The concession was operated by Defendants from 2004 through 2008 for the benefit of the various charitable trusts named in the Attorney General's cross-claim. After this lawsuit was instituted, the trial court appointed a receiver to manage the beer concession during the summer of 2009. No beer has been sold at the Faire since 2009.

{¶6} The Board's second amended complaint alleged that Rickard entered into a contract with the Fire Department, sometime between 1994 and 1997, for the operation and management of beer concessions at the Faire. Pursuant to this alleged contract, the Fire Department was granted the exclusive right to procure permits, dispense beer, and receive the net proceeds from the beer concession. On December 16, 1997, Defendants obtained a conditional use zoning permit from the Trumbull

3

Township Board of Zoning Appeals ("BZA") to operate the Faire. In issuing this zoning permit, the BZA found the Faire would benefit Trumbull Township in part because of the contract with the Fire Department. The Board, therefore, alleged that the contract with the Fire Department was to last as long as the zoning permit was in effect. The Board alleged that Defendants demanded payment of unreasonable expenses and other unlawful payments from the Fire Department to be deducted from the proceeds of the beer concession and that, on or before July 4, 2003, Defendants improperly and unilaterally refused to allow the Fire Department to operate the beer concession.

{¶7} The Board asserted claims for an Accounting and Breach of Contract, alleging they have a right to (1) any unlawful payments and expenses deducted from the proceeds during the time the Fire Department operated the concession and (2) any past and future net proceeds the Defendants obtained or will obtain from beer concessions following its breach of the contract. The Board also asserted a claim for Promissory Estoppel, alleging the Fire Department sustained substantial financial losses by making costly improvements to its property and Defendants' property in reliance on the contract.

{¶8} The Board requested the trial court enter a Declaratory Judgment that the contract is enforceable and that Defendants are required to pay 50% of the net proceeds from the Faire's beer concession to the Board and 50% to the Fire Department, to be donated to the Auxiliary (less any net proceeds previously received by the Fire Department, plus any unlawful amounts previously paid to Defendants). They also requested a declaration that Defendants are required to allow the Auxiliary to

4

operate and manage the beer concession as long as there is a beer concession at the Faire.

{¶9} Finally, the Board asserted a claim for Unjust Enrichment. It alleged Defendants were unjustly enriched in the amount of $35,000.00, which represents $25,000.00 in funds expended and $10,000.00 in labor provided by the Fire Department to build permanent structures and otherwise improve the real property at the Faire, owned by Rickard. The Board further requested an award of attorney fees.

{¶10} The Attorney General's second amended cross-claim stated it is charged with the enforcement of charitable trusts in Ohio, in order that the interests of charitable beneficiaries may be protected and preserved. *See* R.C. 1716.16 and R.C. 109.24. The Attorney General brought the cross-claim on behalf of the following charitable trusts, which had been contacted by Rickard to receive 100% of the profits from the beer concession: the Fire Department, Montville Fire, Cork Little League, Ashtabula County Humane Society, Mesopotamia Fire Association, The Conneaut Fish and Game Club, Peaceful Pastures Horse Rescue, Hartsgrove Volunteer Firefighters Association, and Camp Camo, Inc. The Attorney General asserted eight counts against Defendants: Breach of Fiduciary Duties, Unjust Enrichment, Conversion, Nuisance, "F Permits," Attachment, Reformation of Charitable Trust, and Fraudulent Concealment.

{¶11} Pursuant to O.A.C. 4301:1-1-35(B), a holder of a Class F temporary permit "shall direct the payment of the proceeds from the function to the * * * charitable * * * purpose, provided that the proceeds will not be directed for the profit or gain of any person." The Attorney General alleged that Rickard violated this code provision and also violated common law fiduciary duties to the charitable trusts by willfully, wantonly,

and wrongfully failing to direct the payment of the beer concession proceeds to the charities and, instead, illegally collecting, controlling, retaining, profiting, or distributing those proceeds. The Attorney General further alleged that Defendants fraudulently concealed from the charities the true expenses and amount of profits they were entitled to receive and wrongfully converted those profits. It also alleged Defendants created a nuisance, under R.C. 1716.14, by misleading the public that the proceeds would benefit the charities.

{¶12} The Attorney General requested the trial court to impose and enforce a constructive trust over all proceeds wrongfully collected, controlled, or retained by Defendants for the purpose of redistributing the funds to the appropriate charitable beneficiaries. It also requested an order of attachment on Rickard's assets as a result of his fraudulent and criminal behavior, a declaratory judgment reforming the terms of the charitable trust, and an order permanently enjoining Defendants from participating in further charitable solicitation. The Attorney General requested monetary relief in the form of restitution, civil penalties in the amount of $10,000.00 per day of violation (*see* R.C. 1716.16), punitive damages, attorney fees, and expenses.

{¶13} Defendants filed answers and affirmative defenses to both parties' claims. Rickard also asserted a counter-claim for declaratory relief against the Board with regard to the aforementioned contract.

{¶14} Defendants subsequently filed a motion for summary judgment against the Board, and the Board filed a response. The Attorney General filed a motion for summary judgment against Defendants. Defendants failed to respond to the Attorney General's motion and failed to reply to the Board's response, despite obtaining several

extensions of time from the trial court. The trial court never ruled on these summary judgment motions.

{¶15} Frequent disputes arose between the parties during the discovery process concerning Defendants' responses to formal discovery and requests for production of documents, the veracity of Rickard's deposition testimony and answers to interrogatories, Defendants' failure to timely identify material witnesses, and Rickard's alleged interference with the inspection of his real property. These disputes culminated in a joint motion for sanctions, filed by the Board and the Attorney General, in which they alleged Defendants had engaged "in a systemic pattern of discovery abuses, other contumacious conduct, and fraud on the court" that resulted in substantial delays and otherwise prejudiced them.

{¶16} On April 29, 2014, the trial court granted the joint motion for sanctions. The court made the following findings: (1) Rickard made false and misleading statements to the court and other parties that nonexistent tax return documents had been prepared and produced; (2) Rickard acted egregiously by failing to produce discoverable insurance documents after representing that he would produce them, in an attempt to persuade the court to avoid issuing an order requiring their production; (3) Rickard failed to comply with Civ.R. 26(B) and Civ.R. 34 by failing to produce requested electronic data and documents and by falsely representing that no such electronic data existed; (4) Rickard failed to timely identify his accountant during a period they maintained an ongoing business relationship, which resulted in spoliation of evidence; (5) Rickard failed to produce vendor contracts, which prevented the parties from discovering evidence regarding Faire revenues and the allocation of Faire expenses to

7

all vendors; (6) on multiple occasions, Rickard delayed retaining new counsel until the eve of continued hearings in order to obtain further continuances; (7) Rickard filed a fraudulent bankruptcy petition in order to delay these proceedings, and the financial information listed on his 2005–2010 tax returns is not credible.

{¶17} As a result, the trial court struck Defendants' answers and affirmative defenses to the Board's second amended complaint and to the Attorney General's second amended cross-claim. Defendants' counterclaim was also stricken. The trial court entered default judgment against Defendants, jointly and severally, in favor of the Board and the Attorney General, reserving the issue of damages for a later date. The court stated this was "the only effective remedy to adequately cure the prejudice to the parties and the interference with the efficient administration of justice caused by Rickard's violation of the Civil Rules through repeated instances of discovery misconduct, his contumacious conduct, and his commission of fraud upon the Court." The court further found that awarding a monetary sanction, as an alternative, was not an option because Rickard was not able to pay.

{¶18} A hearing on damages was scheduled for October 6, 2014. The parties instead spent the day in settlement negotiations. An agreement was reached and put on the record. The settlement failed, however, as the agreement was never ratified by the Board at a public meeting.

{¶19} A hearing on damages was rescheduled the following year on November 6, 2015. The trial court issued an entry instructing the parties as to the particulars of that hearing, which stated, in part, that "the Court expects the parties to summarize and list **ALL** the available evidence on the issue of damages so that the Court does not

8

overlook any evidence that may have been submitted during the past seven years."
(Emphasis sic.)

{¶20} Prior to the hearing, Defendants filed an exhibit and witness list. The Board filed a motion in limine to exclude any evidence Defendants intended to use that would dispute facts already admitted as true pursuant to the entry of default judgment. Defendants responded in opposition and filed their own motion in limine to exclude or limit the Board's introduction of irrelevant evidence, including evidence related to the value of Defendants' assets and other evidence unrelated to the charitable beer concession. The Board responded in opposition. Neither motion was ruled on prior to the hearing.

{¶21} The parties renewed their motions in limine at the start of the damages hearing on November 6, 2015. The trial court held the Board's motion in abeyance. The Board attempted to introduce a binder of exhibits at the hearing, a copy of which had not been given to Defendants until immediately prior to the hearing. Defendants moved to exclude the entire binder on that basis, which the trial court denied. Defendants moved to exclude those portions of the binder relating to appraisals of Defendants' real estate, on the basis Defendants had agreed to the appraisals only for the purpose of settlement negotiations. The trial court granted this motion "in principle." Essentially, the trial court instructed the parties it would only hear evidence related to damages, but the parties would have to object during the hearing in order to obtain a specific ruling.

{¶22} The Attorney General made, what it called, a "presentation" to the court. It presented no witness testimony, but presented the affidavit and expert report of Mark

9

Graves, the Chief Accountant for the Attorney General's Office, which had previously been submitted to the trial court. Mr. Graves' report contained the analysis he used to determine the amount of charitable funds received by Rickard from the Fire Department and the other charitable trusts. He reviewed cancelled checks written by the Fire Department to Phoenix Productions; financial documents and an expense summary provided by the Board; a 2003 contract between Rickard and Montville Fire; vendor invoices; expense statements for the summer of 2005 submitted by Defendants to the Ohio Division of Liquor Control; and contracts between Rickard and various charities. Mr. Graves estimated that Defendants received illegal payments in the amount of $100,023.11 between 1994 and 2002, when the Fire Department was operating the beer concession, and $13,700.00 in 2003 when Montville Fire was operating it. Mr. Graves also estimated Defendants wrongfully withheld $322,878.00 from the various charities between 2004 and 2008. The Attorney General therefore requested damages in the amount of $436,601.11, plus interest at the statutory rate. The Attorney General also calculated the statutory civil penalties the trial court could impose—at $10,000.00 per day of violation multiplied by 12 days each year—was close to $2,000,000.00. It further requested punitive damages and imposition of a constructive trust.

{¶23} The Board called Ron Tamburrino, a current Trumbull Township Trustee elected in 2005, who testified regarding the Board's decision to pursue its case against Defendants for breach of contract with the Fire Department. Mr. Tamburrino testified that the Board had reviewed the following: a transcript of a 1997 BZA meeting, at which Rickard spoke of conversations he had with Stanley D. Ruck ("Mr. Ruck"), a firefighter at the time the Fire Department began operating the beer concession; the Fire

10

Department's lease purchase agreement for a fire truck in 1997, signed by Stanley J. Ruck ("Chief Ruck"), Mr. Ruck's father and the fire chief at the time, which listed the beer concession proceeds as a source of funds; a 1998 newsletter issued by the Fire Department, stating its main fundraiser was the beer concession at the Faire; minutes from a 1993 meeting of the Fire Department reflecting a vote to operate the beer concession; and the absence of meeting minutes from 2002 to terminate any agreement with Defendants. The trial court ruled that Mr. Tamburrino was not permitted to offer his opinion as to the terms of the alleged contract, because his opinion was based on inferences he drew from these documents, not his personal knowledge, and the documents did not include anything about actual terms.

{¶24} Mr. Tamburrino testified regarding the conclusions reached in Mr. Graves' expert report. He also testified about the expert report of Bernard Agin, an economic analyst, which had been submitted to the trial court at the sanctions hearing. Neither expert testified at the damages hearing. Mr. Agin's report calculated past and future loss to the charitable beneficiaries; the fair market value of the Faire; and Rickard's life expectancy. The report indicates Mr. Agin was "provided with information regarding past expenses associated with [the Faire]" and Mr. Graves' expert report.

{¶25} Defendants called Mr. Ruck, a member of the Fire Department and son of the former chief of the Fire Department, who testified that no written contract to operate the beer concession ever existed; rather, Defendants and the Fire Department had an oral, year-to-year agreement. Mr. Ruck further testified that the Fire Department obtained the necessary permits and operated the beer concession from 1994 to 2002, at which time the members lost interest and abandoned the concession. He testified

that during the years the Fire Department operated the concession, it handled the sales revenue and retained all beer sales proceeds, less agreed expenses (referred to as "keg charges") it paid to Defendants.

{¶26} Defendants also called Gary E. Jones, Chief of Investigations and Compliance at the Ohio Division of Liquor Control ("ODLC"), who testified the ODLC sent letters in 2005 requesting information to verify that the beer concessions were operating in compliance with the statutes governing the temporary permits. Defendants presented copies of unsigned responses received and stamped by the ODLC, which identified categories and amounts of expenses associated with the beer concession. Mr. Jones could not authenticate the responses, but it was determined at the hearing that they were the same responses Mr. Graves utilized to calculate his expert opinion on lost profits and submitted into evidence by the Board and the Attorney General. Mr. Jones also could not testify that the expenses included in those reports were legitimate, as no investigation was undertaken upon receipt of the responses. Mr. Jones did testify that upon receipt of each response, the ODLC issued another letter indicating no further action was necessary at that time. He stated, however, that this letter was not reflective of the Faire's compliance with the temporary permits; it was simply an acknowledgment that the responses had been received.

{¶27} At the end of the hearing that day, the parties still disputed the admissibility of certain evidence, and additional argument was necessary. The trial court issued a docket entry continuing the hearing until December 22, 2015. The entry also stated the following with respect to the various motions in limine:

> **IT IS ORDERED** that the Plaintiffs' Motion in Limine to Exclude Evidence Not Relating to Damages is **GRANTED**.

12

**IT IS ORDERED** that the Defendants' Motion in Limine to Prevent the Plaintiffs From Using a 70-Exhibit Binder presented to defense counsel on today's date [November 6, 2015] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Limit Real Estate Appraisals which were performed in conjunction with settlement negotiations be **GRANTED IN PRINCIPLE**. The parties are reminded that they must raise the objections again at the time during the hearing that the issues are raised.

{¶28} On December 22, 2015, the trial court made final evidentiary rulings and heard closing arguments. The Board again attempted to introduce the real estate appraisals, to which Defendants objected. The trial court held the appraisals were inadmissible and the Board was only permitted to rely on public records relating to the value of Defendants' real estate. Based on Mr. Agin's expert report, the Board requested contractual damages in the amount of $1,330,627.00. This figure represents $735,964.00 in past beer proceeds for 2003 through 2015, and $594,663.00 in future beer proceeds for 2016 through 2032. The Board requested the trial court impose a constructive trust, in the alternative, for the future loss.

{¶29} The parties subsequently submitted posthearing briefs. On March 29, 2016, the Board and the Attorney General filed a joint motion to strike improper and inadmissible evidence referenced by Defendants in their posthearing brief. The trial court later denied this motion, in its entirety, one day after issuing its final order in this matter.

**Trial Court's Final Order**

{¶30} The trial court issued its final order on July 11, 2016. At the outset, it stated: "Although Defendants have failed to cooperate and have attempted to sabotage this litigation, the Court must still strive to accomplish a just result. Personal animosity

13

will not be engaged in by the Court." The following is a summary of the trial court's findings with respect to the Board's and the Attorney General's claims for relief.

*A. The Board's Damages*

{¶31} The trial court first addressed the Board's claim that all the averments in its second amended complaint are admitted, pursuant to Civ.R. 8(D), because the court struck Defendants' answer as a sanction and granted default judgment. The court held that Civ.R. 8(D) has an inequitable result in this case because the Board avers a perpetual contract "which flies in the face of the Statute of Frauds since it could not be completed in one year." Relying on Civ.R. 55(A), the trial court found "that in order to prove contractual damages, the contract must be proven. What damages are recoverable can only be determined by the terms of the contract."

{¶32} The trial court found that any alleged contracts between Defendants and the Fire Department to operate the beer concession were entered into orally and year-to-year. No written contract was ever produced, and the evidence provided that no written contract ever existed. The trial court stated the Board failed to prove what damages may have been recoverable because the terms of the alleged written contract are not known; "for it to infer a valid written agreement existed merely because it was alleged in the pleadings would constitute a failure of justice." Although the Board was the assigned beneficiary of the Fire Department, it was not a party to the oral agreements and therefore had no greater rights than those held by the Fire Department.

{¶33} The trial court awarded no damages to the Board because it failed to establish it was entitled to recover any damages. The trial court also declined to award attorney fees to the Board.

14

*B. The Attorney General's Damages*

**{¶34}** The Attorney General claimed Defendants misappropriated hundreds of thousands of dollars. The trial court found Defendants failed to keep appropriate records, tax returns, or make an accurate accounting of revenues and expenses. Thus, the Attorney General relied on estimates, projections, and approximations to determine sales, expenses, and profits of the beer concession. The only actual records available for the trial court to consider were the 2009 sales and expense report of the court-appointed receiver. The receiver's report showed total receipts of $82,463.00; expenses of $50,283.00; and profits of $32,180.00.

**{¶35}** Four responses to requests from the ODLC in 2005 were found in the records of the ODLC, although those responses were not verified by Mr. Jones, and it is unknown who prepared them. The responses covered four of the six weekends the Faire operated in 2005, and the trial court found the numbers were "strikingly similar" to the 2009 receiver's report. Total sales for those four weekends in 2005 were $52,496.00, for an average of $13,124.00 per weekend; multiplied by six weekends indicated total beer sales would have been approximately $78,764.00 for 2005. The trial court found this amount "compares favorably" to the 2009 total sales of $82,463.00.

**{¶36}** The trial court found that certain categories of expenses listed in the 2005 responses to the ODLC were inappropriate to beer sales and constituted individual profit, to wit: "entertainment," "costuming," and "privileged rent." When those line items are subtracted, total expenses for 2005 are $53,322.00. The trial court found this number also "compares favorably" to the 2009 expenses of $50,283.00 as reported by the receiver.

15

**{¶37}** Thus, with respect to the years 2004 through 2008, the trial court found the 2009 receiver's report to be the most reliable source of verification of total sales and expenses. The trial court inferred and accepted as reasonably accurate that the profit of $32,180.00 as reported by the receiver was also the net profit per year for the years 2004 through 2008.

**{¶38}** The trial court found that no damages were established for the year 2003. Montville Fire operated the beer concession that year, and it is unknown what amount it received in total sales or net profit. Therefore, the trial court could not determine whether any loss was incurred.

**{¶39}** The trial court concluded that the charities represented by the Attorney General should have received $32,180.00 per year, from 2004 through 2008, for a total of $160,900.00. During that period, Defendants paid $22,500.00 to the charities, for a total net loss of $138,400.00.

**{¶40}** The Attorney General also sought statutory civil fines and punitive damages as punishment for Defendants' alleged breach of fiduciary duties to the charitable beneficiaries.

**{¶41}** The Fire Department was the charitable beneficiary for the years 1994 through 2002. It paid a negotiated "keg charge" to Defendants each year, estimated as $11,000.00 per year, or less than $2,000.00 per weekend. Mr. Rusk testified that the Fire Department accepted this as a reasonable amount to cover Defendants' expenses associated with the beer concession. The trial court stated this was far less than the receiver's reported expenses of $50,283.00 in 2009. The court further stated this oral agreement could not be second-guessed by the Board or by the Attorney General. The

16

trial court found Defendants were not malicious in negotiating the "keg charge" and that the amount was reasonable.

**{¶42}** Montville Fire was the charitable beneficiary for the year 2003. The trial court found there is no evidence of who provided labor, what the sales revenue was, or how much the charity received.

**{¶43}** Defendants played a direct role in conducting the beer concession from 2004 through 2008 for the benefit of various charities. The sales revenue, expenses, and net profits were inferred by the trial court, as outlined above, based on the 2009 receiver's report. The trial court found Defendants received little guidance from the state of Ohio regarding appropriate expenses and regulations: the only regulations defining approved expenses indicate they are not to be expended for individual profit. *See* R.C. 4303.20 and R.C. 4303.202. The trial court analogized this to the regulations for charitable gambling operations, which are very inclusive and permit a wide range of expenses. *See* R.C. Chapter 2915. The trial court also found Defendants had reason to believe they were in compliance with state laws and regulations: the ODLC accepted the information submitted in response to its requests regarding expenses and charitable proceeds, and it indicated no further action on the part of Defendants was necessary. The trial court further found no evidence of malicious conduct or intentional violation of any fiduciary duties and no evidence of improper fund tracing from beer-sales profits to the purchase of specific assets.

**{¶44}** The trial court held the imposition of civil fines and punitive damages was inappropriate in this factual situation. The trial court also declined to impose a

constructive trust because it was not established that Defendants committed some wrong or fraud that required confiscation of their property.

*C. Conclusion*

{¶45} The Board was awarded no damages for the years 1994 through 2002. The trial court found no damage to anyone for the year 2003 due to lack of evidence. The charities represented by the Attorney General incurred a loss of $138,400.00 for the years 2004 through 2008. The clerk of courts was ordered to release $19,500.00 it was holding to the Attorney General; the remaining $118,900.00 was awarded to the Attorney General against Defendants, jointly and severally, plus interest at the statutory rate. The trial court declined to award attorney fees or to impose a constructive trust. Court costs were assessed against Defendants. Defendants were also enjoined from operating charitable beer sales in the future.

{¶46} Finally, the trial court stated, "[t]o the extent that any previous orders of the Court conflict with this one, such orders are hereby vacated."

**Assignments of Error**

{¶47} The Board and the Attorney General filed separate appeals from this final entry, including assignments of error relating to the trial court's denial of their joint motion to strike improper and inadmissible evidence.

*A. The Board's Assignments of Error*

> [1.] The court erred and abused its discretion in failing to apply Civ.R. 8(D) at the damages hearing after previously striking the defendants' answer and affirmative defenses and dismissing Defendant Rickard's counterclaim.

> [2.] As a matter of law, the court committed prejudicial error and violated the parties' right to due process in converting a hearing on damages held pursuant to a default judgment entered as a sanction

18

to a bench trial on the merits without providing advance notice to the parties and after it had granted a motion in limine to exclude evidence that contradicted allegations already deemed admitted.

[3.] The court erred and abused its discretion in denying Plaintiff Board of Trumbull Township Trustees' and Defendant-Cross Claimant Ohio Attorney General's joint motion to strike improper and inadmissible evidence that caused severe prejudice to the parties.

[4.] The court erred in construing R.C. 4303.20 as governed by Ohio's gambling statute R.C. 2915 and in finding the misappropriation of funds by Lawrence Rickard was lawful under the statute.

[5.] The court erred and abused its discretion in failing to provide Plaintiff Board of Trumbull Township Trustees a remedy on its claim for an accounting.

[6.] The court erred and abused its discretion in failing to find the existence of a constructive trust where defendants were unjustly enriched and funds illegally misappropriated were traceable to defendants' purchase of the properties in question.

[7.] The court erred and abused its discretion in denying Plaintiff Board of Trumbull Township Trustees attorney fees and expenses when it found that defendants engaged in severe discovery misconduct.

B. *The Attorney General's Assignments of Error*

[1.] The trial court abused its discretion in failing to impose a constructive trust where Defendants were unjustly enriched and the proceeds were traceable to Mr. Rickard's purchase of real property.

[2.] The trial court erred in finding that Civ.R. 8(D) did not preclude introduction of evidence regarding the contract between TTVFD and Mr. Rickard after it had stricken Defendants' answer, affirmative defenses, and counterclaim.

[3.] The trial court erred and violated the parties' right to due process by converting the damages hearing to a trial on the merits without providing sufficient notice and after granting the Board's motion in limine to exclude evidence unrelated to damages.

19

[4.] The trial court erred and abused its discretion in denying the parties' motion to strike improper and inadmissible evidence.

[5.] The trial court erred in using R.C. 2915 to construe what types of expenses are permissible under R.C. 4303.20.

[6.] The trial court erred by relying on information submitted to the Ohio Division of Liquor Control ('ODLC') when determining the revenue, expenses, and charitable proceeds from the sale of alcohol at the GLMF.

## Application of Civil Rules 8, 37, and 55

{¶48} As a result of discovery misconduct, the trial court imposed sanctions against Defendants by striking their answers, affirmative defenses, and counterclaim and by entering a default judgment in favor of the Board and the Attorney General. At the time the sanction was entered in 2014, Civ.R. 37(B)(2) read, in relevant part:

If any party * * * fails to obey an order to provide or permit discovery, * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: * * * (c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party[.]

{¶49} Civ.R. 8(D) provides that "[a]verments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading." In its entry imposing sanctions, the trial court did not state all the averments were admitted as a result of the answers and affirmative defenses being stricken, but it did state that the issue of damages shall be taken up at a later date.

{¶50} In its final order following the damages hearing, the trial court found that Civ.R. 8(D) would have an inequitable result when applied to the terms of the contract between Rickard and the Fire Department. It found the amount of recoverable

20

damages under the contract could only be determined by ascertaining the terms of that contract. The trial court therefore relied on Civ.R. 55(A), which applies to default judgments entered against a defendant who has failed to plead or otherwise defend:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall when applicable accord a right of trial by jury to the parties.

{¶51} The Board, in its first assignment of error, and the Attorney General, in its second assignment of error, state this was reversible error. They argue it was an abuse of discretion for the trial court to consider any evidence relating to the contract because its existence and its terms were admitted when Defendants' answers were stricken. They further assert that Civ.R. 55(A) does not apply, as a matter of law, to default judgments entered as a Civ.R. 37 sanction for discovery misconduct.

{¶52} Appellants' argument that Civ.R. 55(A) does not apply to default judgments entered as a Civ.R. 37 sanction is untenable. The plain language of Civ.R. 55 and Civ.R. 37 do not provide for such a result. The Attorney General invokes *Reese v. Proppe* for the proposition that a judgment entered against a party by operation of Civ.R. 37(B) is not a true default judgment to which Civ.R. 55(A) applies. In *Reese*, the trial court entered a default judgment against a defendant who had filed an answer but failed to appear at a hearing. 3 Ohio App.3d 103, 104 (8th Dist.1981). The *Reese* Court held this was error because a default judgment is only appropriate "when the defendant has failed to contest the allegations raised in the complaint[.]" *Id.* at 105. A

21

default judgment entered pursuant to Civ.R 37 was not an issue before the *Reese* Court, and the case is inapposite to the facts at hand.

{¶53} The Tenth District Court of Appeals has applied the provision in Civ.R. 55(A) that accords a right of trial by jury to a defaulting party, even when the default judgment was entered by way of a discovery sanction under Civ.R. 37(B). "'[W]e find the only result consistent with both Civ.R. 38(D) and Civ.R. 55(A) is to require a trial by jury upon the issue of damages, when necessary, if it has been previously demanded by any party, even though default judgment be entered as a sanction for failure to comply with discovery requests pursuant to Civ.R. 37(B)(2)(c)[.]'" *Malaco Constr., Inc. v. Jones*, 10th Dist. Franklin No. 94APE10-1466, 1995 WL 506026, *8 (Aug. 24, 1995), quoting *Harris v. Interstate Check Sys., Inc.*, 10th Dist. Franklin No. 77AP-275, 1977 WL 200414, *2 (Sept. 20, 1977), and citing *DMAC Co. v. Bochner*, 1st Dist. Hamilton Nos. C-840686 & C-840687, 1985 WL 8953, *3-4 (July 31, 1985).

{¶54} The Ohio Supreme Court has similarly held that "the notice requirement of Civ.R. 41(B)(1) applies to *all* dismissals with prejudice, including those entered pursuant to Civ.R. 37(B)(2)(c) for failure to comply with discovery orders. A dismissal on the merits is a harsh remedy that calls for the due process guarantee of prior notice. Accordingly, the two rules should be read *in pari materia* with regard to dismissals with prejudice." *Ohio Furniture Co. v. Mindala*, 22 Ohio St.3d 99, 101 (1986) (emphasis sic). "This holding stems from and reflects 'a basic tenet of Ohio jurisprudence that cases should be decided on their merits.'" *Id.*, quoting *Perotti v. Ferguson*, 7 Ohio St.3d 1, 3 (1983); *see also Baker v. Edmonds*, 2d Dist. Clark No. 2002-CA-17, 2003-Ohio-1030, ¶24 ("the preference for adjudicating disputes on their merits, rather than on the basis of

procedural defaults, alluded to in [*Mindala*], militates in favor of the cautious exercise of the ultimate sanction of default judgment").

{¶55} Further, "[a] trial court has considerable latitude in imposing sanctions for discovery violations and a trial court's decision on a discovery violation will not be reversed absent a showing of an abuse of discretion." *Johnson Controls, Inc. v. Cadle Co.*, 11th Dist. Trumbull No. 2006-T-0030, 2007-Ohio-3382, ¶15, citing *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256 (1996). An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler,* 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). When fashioning an appropriate sanction for discovery violations, a trial court is not limited to the orders outlined in Civ.R. 37, such as default judgment, dismissal, or striking a pleading; it is permitted to "make such orders in regard to the failure as are just." Former Civ.R. 37(B)(2).

{¶56} Here, the trial court determined it would be unjust to accept, as admitted, the Board's averment that a perpetual contract existed, when the Board's evidence showed that a written contract to that effect could not be located and no one had personal knowledge of any written contract. In light of the harsh discovery sanction that had been imposed against Defendants, the trial court determined it was necessary to establish the terms of the contract in order to reach an equitable result regarding damages. The trial court's refusal to accept appellants' position that Civ.R. 8(D) required a finding of truth as to all averments was well within the discretion of the trial court, as it was the trial court's sanction that created the issue. As noted above, the law in Ohio is clear that the scope of the sanctions imposed is left to the sound discretion of

23

the trial court. Notably, the trial court did not state that a contract did not exist nor did it state that Defendants were not liable on the contract. Rather, it found a year-to-year, oral agreement did exist and then determined—based on evidence put forth by both the Board and Defendants—that both the Fire Department and Defendants complied with that agreement on a yearly basis and that no amount of contractual damages was proven for any other period of time.

{¶57} We cannot say the trial court abused its discretion in refusing to accept all averments in the complaint and cross-claim as true. Nor can we say the trial court abused its discretion in requiring the Board to prove, as it related to damages and as specifically permitted by Civ.R. 55(A), the terms of an alleged written contract it could not locate, which the Board alleged was to last in perpetuity until the death of Rickard, and for which it was attempting to collect over one million dollars. It is apparent the Board was committed to receiving a windfall based on its interpretation of the trial court's sanction, while the trial court was committed to reaching a just decision based on what the parties had actually agreed upon.

{¶58} The Board's first assignment of error and the Attorney General's second assignment of error are without merit.

## Due Process

{¶59} The Board, in its second assignment of error, and the Attorney General, in its third assignment of error, assert the trial court violated their right to due process by converting the damages hearing to a trial on the merits without sufficient notice and after granting the Board's motion in limine to exclude evidence unrelated to damages.

24

{¶60} The Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law. "Due process of law involves only the essential rights of notice, hearing or opportunity to be heard before a competent tribunal." *State v. Edwards*, 157 Ohio St. 175 (1952), paragraph one of the syllabus. "[A]t a minimum, due process of law requires that when a court conducts a hearing, it give the parties a reasonable opportunity to be heard." *City of Painesville Bldg. Dept. v. Petro*, 11th Dist. Lake Nos. 99-L-181 & 99-L-182, 2001 WL 589410, *2 (June 2, 2001), citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). We review due process challenges de novo. *JPMorgan Chase Bank, Natl. Assoc. v. Muzina*, 11th Dist. Lake No. 2015-L-028, 2015-Ohio-4432, ¶27 (citation omitted).

{¶61} Prior to the damages hearing, the trial court issued an entry instructing the parties as to the particulars of the evidence to present. That entry stated, in part:

> The parties have made further inquiries as to what type of evidence the Court wants at the damage hearing. The Court has advised the parties that they must either identify in the record, evidence that may have been offered in motion hearings or by deposition, and the Court will permit additional testimony and evidence to be submitted by the parties. In sum, the Court expects the parties to summarize and list **ALL** the available evidence on the issue of damages so that the Court does not overlook any evidence that may have been submitted during the past seven years. [Emphasis sic.] These hearings in this case have been lengthy, the files are numerous and voluminous, and the Court wants to be assured that it has all the evidence before it on the issue of damages. Judgment has previously been rendered against Defendant Rickard, et al., on the issue of liability.

Thus, the parties had notice of the damages hearing and were given a meaningful opportunity to be heard.

{¶62} Contrary to the characterization of events asserted by appellants, the trial court did not convert the damages hearing to a trial on the merits. The trial court

allowed evidence as to the damages that could be recovered under the terms of the contract. In doing so, the trial court determined that no damages were established under the alleged written contract because the Board's own evidence was that a written contract could not be located and its only witness, Mr. Tamburrino, had no personal knowledge of the existence or terms of any written contract.

{¶63} Appellants cannot say they did not have notice that the trial court was considering this issue in its attempt to elicit recoverable damages. At the hearing, the trial court repeatedly indicated it had yet to hear any evidence about the terms of the contract because it appeared no one before the court had ever seen a written contract or had personal knowledge of terms of a written contract. Additionally, the damages hearing took place over two days, with approximately six weeks in between each day. The Board did not offer any additional evidence as to the terms of the contract on the second day of hearings nor has it asserted on appeal that it had additional evidence to present at that time. It was very clear, however, that the parties had agreed that the primary obligation of the Fire Department was to provide labor for the beer concession. It is also undisputed that the Fire Department did not provide any labor after 2002. To claim damages "in perpetuity" and for periods during which other charitable organizations provided that labor is nonsensical.

{¶64} Finally, appellants cannot rely on the trial court's ruling on the Board's motion in limine in support of the argument that their due process rights were violated. A ruling on a motion in limine is interlocutory and does not determine the admissibility of evidence. *State v. Leslie*, 14 Ohio App.3d 343, 344 (2d Dist.1984). In its ruling granting the Board's motion in limine, the trial court reminded the parties "that they must raise

the objections again at the time during the hearing that the issues are raised." Thus, they were on notice that their evidentiary arguments would be further addressed at the damages hearing.

{¶65} Appellants were not denied due process of law, as they were granted both notice and a reasonable opportunity to be heard on the issues relevant to the trial court's determination of damages.

{¶66} The Board's second assignment of error and the Attorney General's third assignment of error are without merit.

**Evidentiary Rulings**

{¶67} The Board, in its third assignment of error, and the Attorney General, in its fourth assignment of error, assert the trial court erred in denying their joint motion to strike improper and inadmissible evidence.

{¶68} A trial court's decision to grant or deny a motion to strike is reviewed under the abuse of discretion standard. *Johnsonite, Inc. v. Welch*, 11th Dist. Geauga No. 2011-G-3012, 2011-Ohio-6858, ¶21, citing *State ex rel. Mora v. Wilkinson*, 105 Ohio St.3d 272, 2005-Ohio-1509, ¶10.

{¶69} In their posthearing brief, Defendants referenced Mr. Ruck's testimony at the damages hearing and the affidavits of Rickard and Chief Ruck, which had previously been submitted to the trial court. Appellants filed a joint motion to strike the sections of the posthearing brief that reference these items, as they were improper and inadmissible for the purposes of the damages hearing. They stated: "Mr. Rickard's affidavit is inadmissible hearsay. The Rucks' testimony goes to facts already deemed admitted and is therefore irrelevant to a determination as to the amount of damages

27

and/or the appropriate remedy to address the parties' claims. [Chief] Ruck's affidavit in particular is invalid because it is unsworn." The trial court overruled this motion in its entirety.

{¶70} The relevancy of Mr. Rusk's testimony was a determination to be made within the trial court's discretion, and that decision will not be disturbed on appeal absent a clear showing of an abuse of that discretion. *See Renfro v. Black*, 52 Ohio St.3d 27, 32 (1990) (citation omitted). In a default judgment proceeding, the trial court is permitted "to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter[.]" Civ.R. 55(A). In doing so, damages must be proven the same as in a case assigned for regular trial. *Mid-America Acceptance Co. v. Reedy*, 11th Dist. Lake No. 89-L-14-072, 1990 WL 94816, *3 (June 29, 1990). "'The court must also take into consideration elements, facts, and circumstances which tend to mitigate, reduce or correctly reflect the damages sustained.'" *Id.*, quoting *Blank v. Snyder*, 33 Ohio Misc. 67, 69 (1972).

{¶71} Mr. Rusk's testimony was relevant to the determination of damages, as he was the only witness who had personal knowledge of the business relationship between the Fire Department and Rickard. The trial court also made it clear, on more than one occasion, that it intended to hear testimony about the terms of the alleged contract in order to assess damages. As discussed above, the repeated assertion that the trial court was required to accept all the averments in the complaint as "admitted" is simply without merit.

{¶72} The trial court did not abuse its discretion in considering Mr. Rusk's testimony.

28

{¶73} Additionally, the trial court did not abuse its discretion in failing to strike the affidavits of Chief Ruck and Rickard. First, the trial court made no reference to Rickard's affidavit. Second, the only reference to Chief Ruck's affidavit in the trial court's final entry was with regard to the Board's request for attorney fees. The trial court indicated Chief Rusk's affidavit should have put the Board on notice to contact the Fire Department, before pursuing its claim, regarding the Board's assumption that a written contract existed:

> [T]he affidavit of Chief Stanley J. Ruck contained in the Defendants' motion for summary judgment put the Board on notice that there was no contract and the [Fire Department] abandoned the concession. Despite this notice, the Board did not contact the [Fire Department] regarding the contract, choosing instead to pursue a meritless claim. Therefore, no attorney's fees will be awarded.

{¶74} Thus, the trial court did not rely on either of these affidavits for the truth of the matter asserted therein as it pertained to damages. The trial court did not err in denying the joint motion to strike improper and inadmissible evidence.

{¶75} The Board's third assignment of error and the Attorney General's fourth assignment of error are without merit.

{¶76} The Attorney General asserts, under its sixth assignment of error, that the trial court erred by placing undue weight on the responses submitted to the ODLC in 2005 when determining the revenue, expenses, and charitable proceeds from the beer concession.

{¶77} "[I]t is the trial court which decides whom to believe and how much weight should be given to any piece of evidence." *Beatty v. Wilson*, 4th Dist. Ross No. 1808, 1992 WL 226342, *1 (Sept. 9, 1992); *see also Domo v. Stouffer*, 64 Ohio App.3d 43, 51 (6th Dist.1989), citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984) ("It

29

was the function of the trial judge, as the finder of fact, to observe the demeanor of the witnesses, examine the evidence and weigh the credibility of the testimony and evidence presented."). We cannot substitute our judgment for that of the trial court in this regard; our review is limited to whether the trial court's judgment was against the manifest weight of the evidence, i.e., the greater amount of credible evidence, keeping in mind the presumption in favor of the trier of fact. *Id.* (citations omitted); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶19 & ¶21.

{¶78} Mr. Jones, chief investigator of the ODLC, testified with regard to the letters sent to the Faire in 2005 to verify the beer concessions were operating in compliance with Ohio's liquor laws. During Mr. Jones' testimony, Defendants presented copies of the unsigned responses received by the ODLC; Mr. Graves had utilized these same responses to calculate his expert opinion on lost profits. Mr. Jones stated the file stamp on the documents appeared to be that used by the ODLC when it receives documents, but he could not authenticate the responses because he did not personally receive them and they were not signed. Mr. Jones also could not testify as to the accuracy of the reported categories and amounts of expenses related to the beer concession, total sales, and charitable proceeds or whether the Faire was operating in compliance, because no further investigation was taken by the ODLC.

{¶79} The Board and the Attorney General objected throughout Mr. Jones' testimony. The trial court stated, "Well, he might be able to testify that this is part of their records, but he sure can't testify that these expenses are legitimate. * * * [C]ertainly, the Court is not going to be obligated to say that all these expenses were legitimate since there's nobody here to tell us what they even consisted of." At the

conclusion of that day's hearing, in deciding an argument regarding admissibility, the trial court stated: "I'll admit them, but they are going to get no weight. They're valueless. * * * I'll admit them into evidence, Exhibits A through J, and the issues of credibility are for me to decide[.]"

{¶80} In its final entry, the trial court stated: "To verify the receiver's amount, the Court has reviewed the 2005 receipt and expense reports sent to the [ODLC] in 2005. Although these reports are not verified and it is unknown who prepared them, they are strikingly similar to the 2009 receiver reports." The trial court further found that certain expenses listed on the 2005 responses were inappropriate to beer sales; when those items were subtracted, the amount compared favorably to the amount of expenses reported by the receiver in 2009. The trial court found the receiver's report was the most reliable source of verification for beer sales in 2004 through 2008, which was further verified by similar figures reported to the ODLC in 2005.

{¶81} We do not find merit with the Attorney General's argument that the trial court gave undue weight to the 2005 responses. They were certainly relevant to the determination of damages, and they were merely used to bolster the 2009 receiver's report, the credibility of which has not been attacked. The trial court's judgment is not against the manifest weight of the evidence.

{¶82} The Attorney General next argues the trial court erred by implying the Attorney General was estopped from contesting the figures contained in the 2005 responses. It bases this argument on the following quote from the trial court's final entry: "Records from the [ODLC] indicated the Defendants responded and provided the requested information. Although the information submitted was neither verified nor

31

signed by an individual, the State accepted the information submitted to it by the Defendants."

{¶83} This finding related to the trial court's decision not to award punitive damages to the Attorney General; it in no way implied the Attorney General was estopped from contesting the specific figures in the 2005 responses. Regardless of the figures, the trial court found the fact that the state had accepted the responses without further investigation gave Defendants reason to believe they were in compliance with state laws and regulations.

{¶84} The Attorney General's sixth assignment of error is without merit.

## Constructive Trust

{¶85} On the issue of a constructive trust remedy, the trial court found the Board and the Attorney General "failed to establish that the Defendants have committed some wrong or fraud which requires a confiscation of his property."

{¶86} The Board asserts, in its fourth assignment of error, that the trial court erred in determining Defendants had committed no wrong and, in its sixth assignment of error, that the trial court erred in failing to impose a constructive trust.

{¶87} The Board's arguments are premised on its allegation that Defendants misappropriated $100,023.11 in charitable trust assets from the Fire Department. This figure represents the negotiated "keg charge" the Fire Department paid to Defendants each year it operated the beer concession, from 1994 through 2002—approximately $11,000.00 per year, or less than $2,000.00 per weekend. In fact, the testimony in this regard was that the Fire Department, who had entered into the contract with Rickard, annually agreed to the charges. It is only the Board, who later acquired the rights under

32

the contract, that objects to them. The trial court found Defendants were not malicious in negotiating this "keg charge" and that the amount was reasonable. The trial court did not find Defendants were unjustly enriched by this "keg charge"; thus, the Board was not entitled to any remedy, let alone imposition of a constructive trust.

{¶88} The Board's fourth and sixth assignments of error are without merit.

{¶89} In its fifth assignment of error, the Attorney General asserts the trial court erred in determining Defendants had committed no wrong by using R.C. Chapter 2915, relating to Ohio's charitable gambling laws, to construe what types of expenses are permissible under a Class F temporary permit for alcohol sales issued pursuant to R.C. 4303.20.

{¶90} This argument is raised in response to the following statement in the trial court's final entry regarding the issue of whether Defendants engaged in malicious conduct or intentionally violated any fiduciary duties:

> During the latter years [2004-2008], the Defendants received little guidance from the State of Ohio. The only regulations defining approved expenses provide that the expenses are not to be expended for the profit of any individual. The State regulations defining the charitable gambling operations are very inclusive and permit a wide range of expenses to be charged before charitable gambling profits are calculated.

{¶91} This assignment of error is based on a false premise. The trial court did not use R.C. 2915 to determine which expenses were permissible under R.C. 4303.20. The trial court referenced the guidelines contained in R.C. 2915 to underscore its finding that Defendants had reason to believe they were not violating Ohio's liquor laws. The state had provided very little guidance to licensees in that regard, as compared to the guidelines provided by the state for those engaged in charitable gambling operations.

33

{¶92} The Attorney General's fifth assignment of error is without merit.

{¶93} The Attorney General, in its first assignment of error, asserts the trial court erred in failing to impose a constructive trust where Defendants were unjustly enriched by misappropriated funds and the beer concession proceeds were traceable to Rickard's purchase of real property.

{¶94} The trial court determined the charities represented by the Attorney General were charged excessive expenses for a total net loss of $138,400.00. The Attorney General asserts the appropriate remedy was imposition of a constructive trust over Rickard's property because Defendants were unjustly enriched.

{¶95} A constructive trust is an equitable remedy that may be invoked when property has been acquired by fraud or "where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud." *Ferguson v. Owens*, 9 Ohio St.3d 223, 226 (1984), citing 53 *Ohio Jurisprudence*, Trusts, Section 88, at 578-579 (2d Ed.1962); *see also Cosby v. Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, ¶17.

{¶96} The party seeking judicial recognition of a constructive trust bears the burden of producing clear and convincing evidence justifying it. *Univ. Hosps. of Cleveland, Inc. v. Lynch*, 96 Ohio St.3d 118, 2002-Ohio-3748, paragraph three of the syllabus. The ultimate decision to impose a constructive trust, however, lies within the sound discretion of the trial court. *See Willson v. Bd. of Trustees of The Ohio State Univ.*, 10th Dist. Franklin No. 91AP-144, 1991 WL 274862, *18 (Dec. 24, 1991), citing *Hecht Co. v. Bowles*, 321 U.S. 321 (1944) (whether to "award or withhold equitable relief turns on the facts of the case and is within the sound discretion of the trial court").

"[T]he trial judge has first-hand exposure to the litigants and the evidence and, thus, is in a considerably better position to bring the scales into balance than this court would be." *Id.* (citations omitted). Therefore, we review the relief awarded only for an abuse of discretion. *Id.*

**{¶97}** Here, the trial court found no evidence of malicious conduct or any type of wrong or fraud that would justify a constructive trust remedy. That holding is not against the manifest weight of the evidence, as has been outlined throughout our opinion. We will not substitute our judgment for that of the trial court on the issue of fashioning an appropriate remedy. We do not find the trial court abused its discretion in failing to impose a constructive trust on Defendants' assets in favor of the Attorney General.

**{¶98}** The Attorney General's first assignment of error is without merit.

**Accounting**

**{¶99}** The Board asserts, under its fifth assignment of error, that the trial court erred in failing to provide the Board a remedy on its claim for an accounting.

**{¶100}** In its second amended complaint, the Board requested the trial court order Defendants to provide an accounting for January 1, 1994, to the present representing the exact amount of the following: the gross proceeds derived from the operation and management of the beer concession; related reasonable expenses; the amount of expenses charged by Defendants to any such person or entity; amounts of all other payments made to Defendants by the Fire Department and any other person or entity directly or indirectly related to such beer concession.

**{¶101}** The Board's request was for an accounting of proceeds as a remedy for the alleged breach of contract. The trial court found the Board was not entitled to any

35

damages for breach of contract. Now, on appeal, the Board claims it was entitled to an accounting of proceeds as the beneficiary of one of the charitable trusts, i.e., the Fire Department. The Attorney General brought suit on behalf of the charitable trusts, including the Fire Department, to recover misappropriated funds. Although both parties are seeking recoupment of the beer proceeds for 2004 through 2008, the Board denied before the trial court that it was bringing a claim that in any way overlapped that of the Attorney General. The Board stated it was suing for contractual damages, while the Attorney General was suing for breach of fiduciary duties. The Board, as opposed to the Attorney General, has not provided any authority to establish it has standing to raise this argument as a beneficiary of the charitable trust. This is particularly true due to the undisputed fact that the Fire Department provided no labor to support the beer concession after 2002. The Attorney General, who does have standing, did not make a claim for an accounting before the trial court and does not raise any similar argument on appeal.

{¶102} The Board's fifth assignment of error is without merit.

**Attorney Fees**

{¶103} Under its seventh assignment of error, the Board asserts the trial court erred in failing to award the Board attorney fees and expenses when it found that Defendants engaged in severe discovery misconduct.

{¶104} Again, "[a] trial court has considerable latitude in imposing sanctions for discovery violations and a trial court's decision on a discovery violation will not be reversed absent a showing of an abuse of discretion." *Johnson Controls, supra*, at ¶15,

36

citing *Nakoff, supra*, at 256. "Specifically, in deciding a sanction, the trial court should observe several factors:

> 'the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate.'

*Maggard v. Zervos*, 11th Dist. Lake No. 2001-L-072, 2003-Ohio-6688, ¶16, quoting *Billman v. Hirth*, 115 Ohio App.3d 615, 619 (10th Dist.1996), quoting *Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175, 178 (9th Dist.1987).

{¶105} In its joint motion for sanctions, appellants requested the trial court to grant relief, inter alia, in the form of attorney fees and expenses due to Defendants' discovery abuses that caused substantial delays and prejudice to appellants. The trial court granted the motion for sanctions, and indeed imposed a very significant sanction by striking Defendants' answer and counterclaim. It did not include as one of those sanctions an award of attorney fees and expenses. The trial court found the only effective sanction was to strike Defendants' pleadings and enter default judgment, stating:

> [A]ny lesser sanction would be futile because equity would require that Rickard pay as a condition of the sanctions, in advance of continued proceedings, substantial attorney's fees and expenses incurred by the Board and Attorney General in bringing the joint motion for sanctions, and Rickard contends he is financially destitute and unable to meet his monthly financial obligations. The Court finds he could not pay a monetary sanction that would allow the case to proceed.

{¶106} In its final order, after hearing the testimony that offered no support for the Board's position about a "perpetual" written contract, the trial court further stated it

37

chose not to award attorney fees because it found the Board chose "to pursue a meritless claim."

{¶107} We find no abuse of discretion and will not substitute our judgment for that of the trial court on this issue.

{¶108} The Board's seventh assignment of error is without merit.

**Conclusion**

{¶109} The judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.